Case 1:01-cv-03645-GET   Document 183   Filed 02/10/05   Page 1 of 14

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 1 0 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

# United States Court of Appeals
For the Eleventh Circuit

No. 03-13729

District Court Docket No.
01-03645-CV-GET-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 5, 2004

THOMAS K. KAHN
CLERK

BENJAMIN J. HOCKENSMITH,
as executor of the estate of Dale Denise Hockensmith, deceased and as surviving spouse of Dale Denise Hockensmith, deceased; also, as surviving father of Baby Hockensmith, a deceased baby,
MICHAEL BENJAMIN HOCKENSMITH,
a minor, by and through his father and next friend, Benjamin J. Hockensmith,

Plaintiffs-Appellants,

versus

FORD MOTOR COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

A True Copy - Attested
Clerk U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
FEB 0 9 2005
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:    August 5, 2004
For the Court:  Thomas K. Kahn, Clerk
By:        Gilman, Nancy

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 03-13729

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 5, 2004
THOMAS K. KAHN
CLERK

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 1 0 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

D.C. Docket No. 01-03645-CV-GET-1

BENJAMIN J. HOCKENSMITH, as executor
of the estate of Dale Denise Hockensmith, deceased;
and as surviving spouse of Dale Denise Hockensmith,
deceased; also, as surviving father of Baby Hockensmith,
a deceased baby, MICHAEL BENJAMIN HOCKENSMITH,
a minor, by and through his father and next friend, Benjamin
J. Hockensmith,

Plaintiffs-Appellants,

versus

FORD MOTOR COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 5, 2004)**

Before BLACK and KRAVITCH, Circuit Judges, and STROM*, District Judge.

STROM, District Judge:

This action arises from a rollover accident involving a 1998 Ford Explorer driven by Denise Hockensmith, who was ejected from the vehicle and fatally injured, along with her unborn fetus. Her son, who was restrained in a car seat in the rear of the vehicle, sustained minor injuries. Benjamin J. Hockensmith brought this action against Ford Motor Company under theories of negligence, failure to warn, and strict liability. At the close of Hockensmith's case, he voluntarily dismissed his negligence claims, and the court granted judgment as a matter of law on his failure to warn claims. At the close of all evidence, the case was submitted to the jury solely on strict liability. Hockensmith alleged that the death of his wife and unborn child, and the injuries to his son, were the result of design defects in the Ford Explorer. After a jury verdict in favor of Ford, Hockensmith filed a timely notice of appeal. Hockensmith argues that the district court erred in its jury instructions, and misinterpreted Heath v. Suzuki Motor Corp., 126 F.3d 1391 (11th Cir. 1997), when it allowed Ford to present statistical evidence of other accidents without a showing of substantial similarity to the Hockensmith accident. We hold that the district

---

* Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

court's instructions were flawed in two respects: (1) the court violated Fed. R. Civ. P. 51 and misled Hockensmith's counsel by failing to include all of Hockensmith's requested instruction on alternative design in its charge to the jury, after having indicated to counsel that it would be included; and (2) the instructions misstated Georgia design defect law. Thus, we reverse and remand this case for a new trial.

*Jury Instructions*

Hockensmith argues that the district court violated Federal Rule of Civil Procedure 51 and misled counsel by stating that it would give Hockensmith's requested instruction on alternative design, and subsequently failing to give that instruction in its entirety. Hockensmith's requested charge on alternative design read as follows:

> [Y]ou may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and [was] technologically feasible.
>
> [T]he existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design.
>
> The "heart" of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one.

3

Hockensmith's Requested Charge No. 13, citing Banks v. ICI Americas, Inc., 450 S.E.2d 671, 674-75 (1994); Jones v. NordicTrack, Inc., 550 S.E.2d 101 (2001). At the conclusion of the trial, the district court judge discussed with counsel which of the parties' requested charges would be included in the court's final charge to the jury. The judge stated, "All right. I will give in substance the following charges - there will be some changes. I may merge some together and may modify others. Plaintiff's 8, 10, 11, 12, 13 and 34. Defendant's 13, the first page only, 25, 26, 29, 31, 34 and 36."

Hockensmith claims that the foregoing statements by the court were misleading. In particular, the judge stated that he would give "the first page only" of Ford's requested charge 13, but the court made no such a limiting statement regarding Hockensmith's requested charge 13. Thus, Hockensmith claims he was left with the impression that all of his requested charge would be given and, accordingly, quoted directly from the third paragraph during his closing argument, told the jury they would hear that charge from the court, and argued at length about specific alternative safer designs Ford could have used for the Explorer. Specifically, Hockensmith's attorney stated during closing arguments: "In fact you're going to hear the court give you a charge that the heart of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one." When

4

the actual charge to the jury was given, however, the second and third paragraphs of Hockensmith's requested charge on alternative design were omitted. Hockensmith claims that this omission violated Fed. R. Civ. P. 51 and undermined the credibility of his entire closing argument. The Court agrees.

Federal Rule of Civil Procedure 51(b)(1) states that the court "must inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments." As the 5th Circuit has stated:

> An essential purpose of Rule 51 is to permit counsel to argue effectively upon the evidence and to know in advance the guiding principles under which the argument should be made. ... A minor variation between the instructions given the jury and those discussed with counsel might not be complained of. Where the variance is great, however, counsel are deprived of the opportunity to plan an effective argument calculated to urge the jury into specific, decisive action

Ebanks v. Southern Railway Co., 640 F.2d 675, 678 (5th Cir. 1981). In Ebanks, the 5th Circuit found that a new trial was warranted because the trial judge violated Rule 51 by materially deviating from what he had represented to counsel would be his charge to the jury. Similarly, in this case, we find that there was a significant deviation between the alternative design charge the district judge discussed with counsel and the charge actually given to the jury. This deviation hampered the ability

of Hockensmith's counsel to argue effectively to the jury, and undermined the credibility of Hockensmith's entire closing argument. See Findlay v. Griffin, 484 S.E.2d 80 (Ga. Ct. App. 1997). We find this omission cannot be considered harmless.

Hockensmith also argues that the district court's instructions confused the jury by providing an incorrect definition of "design defect" under Georgia law. Hockensmith takes issue with the following portion of the court's instructions:

> Now, ladies and gentlemen of the jury, the plaintiff has sued under a legal theory called strict liability. In strict liability, *the only standard* for holding the manufacturer of a product liable is that the product is not merchantable and reasonably suited to the use intended, as that phrase is used in the statute which imposes strict liability. Not merchantable and reasonably suited to the use intended means defective. (Emphasis added).

Hockensmith argues that this instruction is an incorrect statement of law in light of Banks v. ICI Americas, Inc., 450 S.E.2d 671 (Ga. 1994). Moreover, Hockensmith claims that, while the district court did ultimately give several Banks-based instructions, it did so only after giving the incorrect instruction. This confused the jury as to the definition of "design defect" under Georgia law.

In Banks, the Georgia Supreme Court overruled Mann v. Coast Catamaran Corp., 326 S.E.2d 436 (Ga. 1985), stating that the "not reasonably suited for its intended use" standard would no longer be utilized for design defect cases. The court

in Mann had followed Center Chemical Co. v. Parzini, 218 S.E.2d 580 (Ga. 1975), in which the "not reasonably suited for its intended use" standard was applied to a manufacturing defect. In Banks, the court stated:

> The Court in Mann failed to recognize that the Parzini manufacturing defect analysis was not applicable to a design defect case. ... Because neither Parzini nor Mann addresses the appropriate test for reaching the legal conclusion that a product's design specifications were partly or totally defective, we hold that the analysis therein will henceforth not be utilized in products liability design defect cases.

Banks, 450 S.E.2d at 673. The Georgia Supreme Court then made the risk-utility test the law in the state of Georgia for design defect cases by holding:

> Therefore, because the risk-utility analysis is consistent with Georgia law and represents the overwhelming consensus among courts deciding design defect cases, we conclude that the better approach is to evaluate design defectiveness under a test balancing the risk inherent in a product design against the utility of the product so designed. Hence, we hereby adopt the risk-utility analysis.

Banks, 450 S.E.2d at 674. See also Bodymasters Sports Industries, Inc. v. Wimberley, 501 S.E.2d 556, 559 (Ga. App. 1998).

The foregoing cases illustrate that the "not reasonably suited for its intended use" standard has been rejected by the Georgia Supreme Court for design defect cases. By including that standard in its instructions to the jury, and specifically by

stating that it is the "only standard" for holding the manufacturer of a product liable, the district court committed reversible error. While the district court did include subsequent instructions on the risk-utility analysis, this was not sufficient to remedy the confusion that had already been created when the court told the jury that the "not reasonably suited for its intended use" standard was the "only standard." The jury's confusion was evident when it requested a recharge on the issue of liability. Thus, we find the district court's instructions were confusing and contained an incorrect statement of Georgia law.

For the foregoing reasons, we hold that Hockensmith is entitled to a new trial with proper jury instructions.

In addition, Hockensmith argues that the district court erred in refusing to instruct the jury that contributory negligence is not a defense in a strict liability design defect case. Such an instruction might have been necessary if Hockensmith was asserting both negligence and strict liability claims, in order to inform the jury that contributory negligence is a defense to the former but not the latter. However, where the only issue submitted to the jury is strict liability, an instruction that contributory negligence is not a defense is unnecessary and could confuse the jury. The Court finds that this objection is without merit.

## *Admission of Statistical Evidence*

Because we have concluded that this case must be remanded for a new trial, we will address Hockensmith's argument that the district court misinterpreted Heath v. Suzuki Motor Corp., 126 F.3d 1391 (11th Cir. 1997), by allowing Ford's expert, Dr. Wecker, to present statistical evidence of thousands of accidents involving Ford Explorers without any showing of substantial similarity to the Hockensmith accident. However, the district court did not allow Hockensmith to present rebuttal evidence of a single incident involving a Ford Explorer which Hockensmith claimed to be substantially similar to the accident in this case. Hockensmith claims that the express language of Heath contradicts the district court's ruling on this matter. In response, Ford argues that, while evidence of other *specific* accidents (such as the evidence offered by Hockensmith) requires a showing of substantial similarity to the accident in question, the majority of courts do not require a showing of substantial similarity to admit statistical evidence.

According to the "substantial similarity" doctrine, "because of the potential prejudicial impact of prior occurrences or accidents, such evidence is only admissible if conditions substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time." Hessen v. Jaguar Cars, Inc., 915

F.2d 641, 649 (11th Cir. 1990). In Heath, this Court further discussed the "substantial similarity" doctrine, stating:

> In order to limit the substantial prejudice that might inure to a party should these past occurrences or accidents be admitted into evidence, courts have developed limitations governing the admissibility of such evidence, including the "substantial similarity" doctrine. This doctrine applies to protect parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury.

Heath, 126 F.3d at 1396.

We believe that the district court misapplied Heath and the "substantial similarity" doctrine. Ford's statistical evidence, which its expert, Dr. Wecker, admitted was not substantially similar to the Hockensmith accident, should have been excluded. As this Court stated in Heath, the "substantial similarity" doctrine "applies when one party seeks to admit prior accidents or occurrences ... in order to show, for example, 'notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." Id., citing Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir. 1988). For instance, in Heath, Suzuki introduced evidence involving rollovers of three dissimilar vehicles (Chevrolet Suburban, Ford Escort, and Jeep Wrangler), in order to explain how rollovers occur, and to illustrate the mechanics of how lateral

10

forces acting on tires can cause a motor vehicle to roll over. The evidence was not offered in order to show that the Suzuki Samurai, the type of vehicle involved in Heath, did not have an unreasonable propensity to rollover. Thus, this Court held that the "substantial similarity" doctrine did not apply, and that such evidence would not confuse the jury. In this case, however, Ford introduced statistical evidence of other accidents in order to support Dr. Wecker's testimony that the Ford Explorer was not defective. Specifically, Ford introduced its statistical evidence in order to show that the Ford Explorer does not have an unreasonable propensity to roll over in comparison to other compact utility vehicles. We hold that the "substantial similarity" doctrine applies to this type of evidence. Therefore, on remand, the district court is advised that the admission of evidence of other accidents or occurrences, including statistical evidence, when introduced for the purposes outlined above, is dependent upon a showing of substantial similarity to the Hockensmith accident.

Accordingly, the judgment of the district court entered on the verdict must be set aside and the case remanded for a new trial consistent with this opinion. REVERSED and REMANDED.

BLACK, Circuit Judge, specially concurring:

I agree Hockensmith's counsel was led to believe he would receive a particular jury instruction that he did not actually receive in its entirety. I further agree our decision in *Ebanks v. Southern Railway Co.*, 640 F.2d 675 (5th Cir. 1981),[2] controls, Hockensmith prevails, and we should reverse and remand. Additionally, I agree that, on remand, the substantial similarity doctrine applies to statistical evidence submitted as part of the case-in-chief. *See Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997).[3]

I write separately only because I would not also base reversal on the incorrectness of the jury instruction concerning the definition of "design defect," as I do not believe the district court incorrectly stated the law. The district court began by discussing the Georgia statute that creates the cause of action in strict liability design defect cases. The operative phrase in the statute is "not merchantable and reasonably suited." *See* O.C.G.A. 51-1-11(b). Given that this phrase is in the statute, I do not believe the district court erred in using it to instruct the jury. Nor do I

---

[2] *Ebanks* was decided by the former Fifth Circuit on March 25, 1981. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[3] Of course, even if statistical evidence is inadmissible as part of the case-in-chief, it still may be admitted with an appropriate limiting instruction as the basis for an expert's opinion, provided such evidence is reasonably relied upon by other experts in the field. *See* Fed. R. Evid. 703 (providing a balancing test).

12

believe the district court erred when it used the word "only" to refer to this phrase as there was only one statute.

The district court next stated the question was whether there was a defect. Again, I do not see any error. The district court was simply explaining what the statutory phrase meant.

Finally, the district explained that a defect existed if the risks outweighed the utilities, which Hockensmith agrees was the correct inquiry. Accordingly, I do not see any error there either.

In sum, I agree with the majority that this case should be reversed and remanded, but I would base that decision solely on the fact that Hockensmith's counsel did not receive the entirety of a jury instruction he expected to receive.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:
Deputy Clerk
Atlanta, Georgia